### BENSON *v.* PETERSEN.

1. ACCOUNTING—EVIDENCE—REFUNDS TO CORPORATION.

Evidence in suit for accounting by defendant stockholders and corporation for sums refunded to it several years after plaintiffs had transferred their stock to the corporation in consideration of deeds to real estate and receipt of $500 each *held,* insufficient to establish an agreement to divide such refunds, if any, after transfer of the stock.

2. CONSPIRACY—FRAUD—CONCEALMENT—EVIDENCE.

Claimed conspiracy to defraud plaintiffs out of expected refunds on mortgages, paid to corporation in which all parties had owned shares of stock *held,* not shown in record presented in suit for accounting, where evidence shows all parties had the same knowledge as to the possibility of refund and no fraud, misrepresentation or concealment appears to have been practiced by defendants.

Appeal from Wayne; Murphy (George B.), J. Submitted January 6, 1954. (Docket No. 7, Calendar No. 45,919.) Decided April 5, 1954.

Bill by Herbert G. Benson, Harvey E. Hohlfelt and Bert C. Whitney, against Arvid C. Petersen, Carl A. Petersen, James I. Tuckett, Kins Collins, Six Builders, Inc., a Michigan corporation, and others, for an accounting, and for division of funds acquired by corporation as refunds from Federal financing agency. Decree for plaintiffs. Defendants appeal. Reversed and decree ordered entered for defendants.

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur, Corporations § 450.
[2] 13 Am Jur, Corporations § 1125.

*Dennis Boyle,* for plaintiffs.

*Miller, Canfield, Paddock & Stone,* and *William Durance,* for defendants.

BOYLES, J.   This is an appeal by the defendants from a decree entered in the circuit court for Wayne county in chancery directing certain of said defendants to account to the plaintiffs for certain money received by Six Builders, Inc., a Michigan corporation, in which said parties were the stockholders; and to pay to the plaintiffs approximately $26,000 received by said corporation, plus about $4,000 interest, as the plaintiffs' proportionate stockholders' shares of said moneys.   The plaintiffs' claim, in substance, is that said defendants conspired together and defrauded them out of their shares in said money.

In 1942 the parties in this case (with unimportant exceptions) were builders in Detroit, separately engaged in building houses to sell or rent.   They joined as stockholders in organizing a Michigan corporation, now named Six Builders, Inc., to acquire vacant property, subdivide it and build houses thereon, combining in the corporation their individual operations.   These original stockholders consisted of the 3 plaintiffs, the defendants Arvid and Carl Petersen, defendant Tuckett, and another whose interest was later acquired by defendant Collins.   Each had the same number of shares, 534.29.   In 1943 and 1944 this corporation proceeded to acquire vacant land, subdivide it, and built thereon about 330 houses.   The mortgages on these houses were financed by a mortgage corporation, insured by the Federal housing administration, under the provisions of the national housing act.

In 1944 Six Builders, Inc., became involved in financial difficulties and said mortgages became in default.   Under the national housing act, if the mort-

gaged properties are deeded to the mortgagee after default, the mortgagor becomes relieved of further liability; but if the mortgagee disposes of said properties for more than the amount of the liens, the excess belongs to the mortgagor. In 1944 these stockholders, who were also directors of the corporation, after several meetings, agreed among themselves to deed approximately 130 of said mortgaged properties to the Federal housing administration in accordance with the provisions of the national housing act; and in 1945 this was done.

In the course of these meetings in 1944 and later, the directors and stockholders of the corporation discussed liquidation of the corporation. An important meeting was held on June 4, 1946, called by the president of the corporation, to decide on dissolution of the corporation and the division of its assets among the stockholders. The record here is replete with testimony and exhibits offered by the parties and their witnesses as to what was agreed to by the parties at this meeting and in their conferences, and as to what was done. Plaintiffs and defendants are definitely in disagreement as to what happened and as to the conclusions to be drawn therefrom.

At the meeting June 4, 1946, the assets of the corporation were evaluated, without including a possible refund to the corporation from the disposal of the aforesaid mortgaged properties. Plaintiffs claim, and have attempted to prove, that a resolution was adopted at that meeting to provide for the distribution among all the stockholders of any such rebate to the corporation, of any surplus after the Federal agency had disposed of said properties. This is denied by the defendants. It is not necessary to set forth in detail the voluminous testimony pro and con, in that regard. A careful review of the record leads to the conclusion that the resolution claimed by the plaintiffs was not agreed to or adopt-

ed, although it shows that the matter was considered at that meeting. We do not find from the record that the evidence establishes any agreement or understanding as to who should be entitled to share in a refund on the mortgages, if any should be received.

Subsequently, in 1946, the plaintiffs surrendered and transferred their stock to the corporation, and consequently thereby ceased to be stockholders. At about the same time, each plaintiff signed a separate acknowledgment of the receipt of $500 from the corporation, together with the receipt of certain deeds of certain described parcels of real estate, acknowledging it to be

"In full payment and settlement of all fees, wages, or other claims of whatsoever nature against said Six Builders, Inc., and also in exchange for 534.29 shares of common stock of Six Builders, Inc., now registered in name of (name of plaintiff)."

When a refund was later received by the corporation from the Federal agency, several years after the plaintiffs had ceased to be stockholders, the plaintiffs claimed they were entitled to proportionate shares in the ownership and distribution of said refund. The defendants denied, and that question became the subject matter of the instant litigation. Approximately 2-1/2 years after the plaintiffs had transferred their stock to the corporation and had receipted for their proportionate shares of the money and assets of the corporation which they then received, as hereinbefore stated, the Reconstruction Finance Corporation had paid $60,499.97 to the corporation, the refund which is the subject of this controversy.

From our *de novo* review of this record we conclude that it fails to establish any agreement among the stockholders that the plaintiffs should share in

the distribution of such refund, if any, after they had transferred their stock to the corporation.

In filing the instant bill in chancery the plaintiffs rely on the claim that the defendant stockholders entered into a conspiracy to defraud them out of their shares in such a possible refund. The record before us does not establish that there was any misrepresentation or concealment by the defendants as to the possibility of such a refund. All of the stockholders apparently had the same knowledge of the possibility of such a refund when the plaintiffs surrendered their stock and their interest therein to the corporation, for a consideration. Thereafter the defendants were the only stockholders left to share in the refund. We find from the record that the defendants were not guilty of any conspiracy to defraud the plaintiffs, or any fraud against the plaintiffs in obtaining the aforesaid surrender of plaintiffs' stock, the refund for the corporation, or in its distribution to themselves as the sole remaining stockholders.

Reversed for entry of decree for defendants, with costs.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, DETHMERS, and KELLY, JJ., concurred.